COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges O'Brien and Lorish
Argued at Lexington, Virginia

**UNPUBLISHED**

SEAN ANDREW BARB

v.       Record No. 1169-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE MARY GRACE O'BRIEN
OCTOBER 3, 2023

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Andrew S. Baugher, Judge

(David R. Martin; Law Office of David R. Martin, PLLC, on brief),
for appellant.  Appellant submitting on brief.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Sean Andrew Barb (appellant) appeals the trial court's revocation of his previously

suspended sentences.  The court found that he violated a condition of probation while enrolled in the

Community Corrections Alternative Program (CCAP).  Appellant contends that CCAP is a form of

incarceration and the court erred by finding that he was on probation while he participated in CCAP.

BACKGROUND

In June 2010, the Rockingham County Circuit Court sentenced appellant to ten years'

incarceration with nine years suspended for various drug offenses.  In January 2011, the court

sentenced appellant to ten years' incarceration with nine years suspended for gang participation.

The suspended sentences were conditioned upon appellant completing a period of probation, during

which he was to have "no contact with anyone known to be a member of criminal street gang."

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Appellant's suspended sentences were partially revoked for probation violations in February 2014, April 2015, August 2016, and September 2018. Each time, the court extended his probation and included the special condition prohibiting any contact with gang members. Notably, the court's September 21, 2018 revocation order extended appellant's supervised probation "for a period of [two] years upon his release from any and all incarceration."

In 2018, the Augusta County Circuit Court ordered appellant to complete CCAP as a condition of his suspended sentence for an unrelated conviction in that court. Appellant began treatment at CCAP on May 11, 2022, after being released from Keen Mountain Correctional Center. Appellant's probation officer, assigned to supervise appellant while he was enrolled in CCAP, filed a major violation report on May 19, 2022. The probation officer advised the Rockingham County Circuit Court that appellant had been removed from CCAP because he contacted a member of the Gangster Disciples, a recognized criminal street gang. The court issued a capias for appellant's arrest.

At a July 5, 2022 hearing after his arrest, appellant did not dispute that he had contacted gang members while he was enrolled in CCAP. He argued, however, that when he did so, he "had not yet been released from 'any and all incarceration'" and therefore, he did not violate "the special conditions of the supervised probation." The court ruled that the CCAP statutes reflected the General Assembly's intent to "contrast CCAP from active periods of incarceration" and appellant was subject to the terms and conditions of his probation while he was enrolled in CCAP. The court found that appellant violated probation, revoked ten years and eleven months of the previously suspended sentences, and re-suspended eight years and nine months. This appeal followed.

ANALYSIS

The issue before us is a narrow one—whether appellant had been released "from any and all incarceration" and was therefore subject to the conditions of probation at the time he was removed

from CCAP.[1]  Appellant argues that he had not yet been released from incarceration because a CCAP participant is "subject to confinement" under the CCAP statutes.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007).  "Where possible, an appellate court analyzing a statute must determine legislative intent 'from the plain meaning of the language used.'" *Street v. Commonwealth*, 75 Va. App. 298, 306 (2022) (quoting *Hillman v. Commonwealth*, 68 Va. App. 585, 592-93 (2018)).  "[W]hen the General Assembly has used words that have a plain meaning, courts cannot give those words a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Coles v. Commonwealth*, 44 Va. App. 549, 557 (2004) (quoting *Beck v. Shelton*, 267 Va. 482, 488 (2004)).  "We interpret plain, ordinary words in a plain and ordinary way—hence 'the plain meaning rule.'" *Tomlin v. Commonwealth*, ___Va. ___, ___ (June 29, 2023) (quoting *Supinger v. Stakes*, 225 Va. 198, 206 (1998)).  We must also "assume . . . the legislature chose, with care, the words it used when it enacted the relevant statute." *Street*, 75 Va. App. at 306 (quoting *Chenevert v. Commonwealth*, 72 Va. App. 47, 57 (2020)).

Code § 53.1-67.9, establishing CCAP, authorizes the Department of Corrections "to establish and maintain a system of residential community corrections alternative facilities for probationers and parolees whose identified risks and needs cannot be addressed by conventional probation or parole supervision and who are committed to the Department under § 19.2-316.4."

---

[1] Resolving this issue does not require us to give deference to the court's interpretation of what it meant by "any and all incarceration" in its September 21, 2018 order—these words are not ambiguous and do not require interpretation.  In fact, here, the court's decision rested on an interpretation—not of its own order—but of the statutes governing CCAP.  Instead, to resolve the appeal, we must decide whether appellant was subject to the terms of his probation while he was enrolled in CCAP under the relevant statutes.  Merely deferring to a trial court's interpretation of whether CCAP is a form of incarceration or probation could lead to inconsistent results.

Additionally, the issue of time-served credit is not before us, and so we do not address it.  Resolution of that question is unnecessary to decide this appeal.

The program includes "components" for "ensuring compliance with terms and conditions of probation or parole," access to counseling, treatment, education, and career development, and "other programs that will assist the probationer or parolee in returning to society as a productive citizen." *Id.* A "probationer or parolee" who has completed "the community corrections alternative component" of their probation "shall be released from confinement and remain on probation or parole for a period of one year or for such other longer period as may be specified by the sentencing court or Parole Board." *Id.*

Code § 19.2-316.4 governs eligibility for participation in CCAP. Under subsection B, a defendant "who otherwise would have been sentenced to incarceration for a nonviolent felony and whose identified risks and needs the court determines cannot be addressed by conventional probation supervision" or "whose suspension of sentence would otherwise be revoked after a finding that the defendant has violated the terms and conditions of probation for a nonviolent felony[] may be considered for commitment to a community corrections alternative program." Code § 19.2-316.4(B). If a defendant qualifies, the court must impose a sentence, suspend it, and place the defendant on probation pursuant to Code § 19.2-316.4(B)(3). Should a defendant fail to complete the program, "the court shall cause the defendant to show cause why his probation and suspension of sentence should not be revoked." Code § 19.2-316.4(B)(4). "Upon a finding that the defendant voluntarily withdrew from the program, was removed from the program by the Department for intractable behavior, or failed to comply with the terms and conditions of probation, the court may revoke all or part of the probation and suspended sentence . . . ." *Id.*

These statutes describe CCAP as a form of probation. The plain meaning of the language reflects the General Assembly's intent to give the trial court a "valuable tool[] to help rehabilitate an offender," *Howell v. Commonwealth*, 274 Va. 737, 740 (2007), should a "probationer[] [or] parolee[]" present with "needs [that] cannot be addressed by conventional probation or parole

- 4 -

supervision," Code § 53.1-67.9. Under the plain language of Code § 53.1-67.9, the program is only available to "probationers and parolees" and is described as a "component" of probation. *See* Code § 53.1-67.9 ("Upon completion of the program, the probationer or parolee shall be released from confinement and *remain* on probation or parole . . . . As a condition of such probation or parole following the community corrections alternative *component*, a probationer's or parolee's successful participation in employment, career and technical education, or other educational or treatment programs may be required." (emphasis added)).

Appellant focuses on the words "confinement" and "commitment" in the statutes and argues that these words are "indicative of the common meaning of incarceration." We cannot, however, isolate these words from the context in which they are used. *Street*, 75 Va. App. at 306 ("[T]he court must 'examine a statute in its entirety, rather than by isolating particular words or phrases.'" (quoting *Schwartz v. Commonwealth*, 45 Va. App. 407, 450 (2005))). To do so would require this Court to ignore the language specifically establishing the program as a "component" of probation and specifically providing that only "probationers and parolees" are eligible participants. Code § 53.1-67.9. When examining the statutes in their entirety, as the Commonwealth argues, the General Assembly's intent to create an "'alternative' form of probation—not a new form of incarceration" is clear.

Appellant also asserts that *Charles v. Commonwealth*, 270 Va. 14 (2005), *abrogated on other grounds by Rawls v. Commonwealth*, 278 Va. 213 (2009), supports his position that CCAP is a form of incarceration. In *Charles*, the Virginia Supreme Court considered the defendant's status in the now repealed Detention Center Incarceration Program—the predecessor program to CCAP. *Id.* at 16. In creating the Detention Center Incarceration Program, the General Assembly authorized the Department of Corrections to maintain a system of "residential detention centers to provide a highly structured, short-term period of incarceration." Code § 53.1-67.8 (repealed 2019). The

Court concluded that the defendant could receive time-served credit while participating because the program was a form of incarceration. *Charles*, 270 Va. at 18-19. The Court explained that the General Assembly "specifically label[ed] the program as an 'incarceration' program," and found that the "references to 'incarceration'" in the statutes were not inadvertent. *Id.* at 18. The Court reasoned that "by describing the [Detention Center Incarceration Program] in this manner, the General Assembly . . . determined that participation in the Program is incarceration." *Id.*

It is not surprising that in *Charles*, the Court found the Detention Center Incarceration Program to be a form of incarceration when it was specifically labeled as an "incarceration program" and described by the General Assembly as a "short-term period of incarceration." Code § 53.1-67.8 (repealed 2019). Here, however, the General Assembly described CCAP differently. Most conspicuously, there is not a single reference to CCAP as "incarceration" in the statutes. *See* Code §§ 53.1-67.9, 19.2-316.4. Instead of describing CCAP as an "incarceration program," the General Assembly describes it as a "*community* corrections *alternative* program." Code § 19.2-316.4. The General Assembly omits references to "detention centers," and instead provides that CCAP is administered in "alternative facilities," where "probationers and parolees" participate in an extensive list of various rehabilitative programs and receive other forms of assistance. Code § 53.1-67.9. In contrast, participants in the Detention Center Incarceration Program received "military-style management and supervision." Code § 53.1-67.8 (repealed 2019).

"The General Assembly is presumed to be aware of the decisions of this Court when enacting legislation," *Waterman v. Halverson*, 261 Va. 203, 207 (2001), and is presumed to have "chose[n], with care, the specific words of the statute," *Wal-Mart Stores E., LP v. State Corp. Comm'n*, 299 Va. 57, 70 (2020) (quoting *Rickman v. Commonwealth*, 294 Va. 531, 540 n.3 (2017)). "[W]hen the General Assembly has used specific language in one instance but omits that language or uses different language when addressing a similar subject elsewhere in the Code, [the Court]

must presume that the difference in the choice of language was intentional." *Morgan v. Commonwealth*, 301 Va. 476, 482 (2022) (second alteration in original) (quoting *Zinone v. Lee's Crossing Homeowners Ass'n*, 282 Va. 330, 337 (2011)). "Courts must rely on this presumption 'because under these circumstances, it is evident that the General Assembly "knows how" to include such language in a statute to achieve an intended objective,' and therefore, omission of such language in another statute 'represents an unambiguous manifestation of a contrary intention.'" *Id.* (quoting *Brown v. Commonwealth*, 284 Va. 538, 545 (2012)).

The omission of the word "incarceration" in the CCAP statutes and the notable, advertent differences between the descriptions of CCAP and the Detention Center Incarceration Program are an "unambiguous manifestation" of the General Assembly's intent to create a program that differed from the Detention Center Incarceration Program considered in *Charles*. *Id.* If the General Assembly intended for the program to be a form of incarceration, it certainly "kn[e]w[] how to include such language in [the] statute to achieve" this objective in light of the *Charles* decision. *Id.* It chose differently here.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment finding that appellant had been released "from any and all incarceration" and revoking appellant's previously suspended sentences.

*Affirmed*.

Lorish, J., concurring in the judgment.

Barb was released from Keen Mountain Correctional Center after completing the carceral portion of the sentence imposed by the Augusta County Circuit Court. He then started his term of probation with Augusta County, and participation in the Community Corrections Alternative Program (CCAP) was a condition of that probation.

Under a different (earlier) sentence, imposed by Rockingham County, Barb was to start supervised probation with Rockingham County upon his release from "any and all incarceration." The Circuit Court of Rockingham County concluded that Barb was released from incarceration when he began his probation with Augusta County and was transferred to CCAP, and this triggered the start to his probationary term with Rockingham County. Barb's communication with a known gang member, while at CCAP, therefore violated the conditions of his Rockingham County probation.

I agree with the majority that we should affirm the circuit court's judgment. But I do so by deferring to the court's interpretation of its own sentencing order—specifically the phrase "any and all incarceration." The majority, on the other hand, finds that CCAP is generally not "incarceration," for seemingly any purpose, because someone must be on probation to participate in CCAP and because the program is described as confinement, not incarceration. And yet, our Supreme Court, and this Court, have held that participation in a detention or diversionary program may be *both* a condition of probation *and* incarceration, for which a defendant should receive carceral credit on a later-imposed or re-imposed sentence. *Charles v. Commonwealth*, 270 Va. 14, 18 (2005), *abrogated on other grounds by Rawls v. Commonwealth*, 278 Va. 213 (2009); *Boone v. Commonwealth*, 60 Va. App. 419, 426 (2012). Moreover, the General Assembly has, in several statutes, defined "incarceration" to include time spent in CCAP. In other words, the context matters, and the relevant context here is the circuit court's order.

I write separately, despite agreeing with the bottom line, because the majority's analysis of the statutes authorizing CCAP, Code § 53.1-67.9, and establishing eligibility for CCAP, Code § 19.2-316.4, suggests that CCAP is substantially different from the diversionary programs that came before it, such that a defendant should no longer receive "time served" credit for time spent in CCAP under Code § 19.2-306. In other words, the majority suggests that in implementing CCAP, the General Assembly deliberately abrogated *Charles* and *Boone*, unnecessarily casting doubt on whether participants in CCAP should receive credit against a re-imposed sentence for time spent in the program. I disagree that the General Assembly intended such a result, particularly given such a conclusion is unnecessary to resolve this case.

A. <u>The circuit court did not abuse its discretion in interpreting the sentencing order</u>.

I would resolve this case by looking only at how the circuit court used and interpreted the phrase "any and all incarceration" in its own order, as the "best and narrowest grounds available." *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)).

The revocation order suspended eight years and nine months of Barb's sentences "conditioned on successful completion of probation as hereafter set forth" and stated that "[t]he defendant's supervised probation is hereby extended for a period of 2 years upon his release from any and all incarceration." Barb concedes on brief that he "completed the sentence imposed" by the Circuit Court of Augusta County and that he was then "transferred" to CCAP as a condition of his probation with Augusta County. Under the Rockingham County court's sentencing order, if Barb was released from "any and all incarceration" when he was transferred from Keen Mountain Correctional Center to CCAP, then his probation with Rockingham County also began and he was subject to the conditions of that probationary period. The necessary question, then, is how to interpret the phrase "any and all incarceration" in the circuit court's order.

- 9 -

The distinction between interpreting language in a statute and interpreting language in a court's order is critical for our standard of review. While we review a lower court's statutory construction de novo, "circuit courts have the authority to interpret their own orders," and we "accord[] deference to the circuit court's interpretation." *Roe v. Commonwealth*, 271 Va. 453, 457-58 (2006). "We apply an abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable." *Id.* at 458. The court's discretion is not without bounds—it "must be exercised reasonably and not arbitrarily or capriciously." *Smoot v. Commonwealth*, 37 Va. App. 495, 500 (2002). We also interpret an order "within its four corners," considering the specific words and phrases used—and not used—as well as the "structure of the challenged sentence in the order, and the grammatical rules that pertain." *Id.* at 500-01. In other words, our deference does not extend to a court changing the language of the order, rewriting it after the fact.

There is no debate that Barb was released from his carceral sentence, began his term of probation with Augusta County, and participated in CCAP as a condition of that probationary period. Given that, I cannot say the circuit court abused its discretion in concluding that Barb was released from "any and all incarceration" before beginning CCAP, as the phrase was used in the court's order. Even if reasonable minds could differ, the circuit court did not act arbitrarily or capriciously. To the contrary, the court's interpretation adheres to the "four corners" of the revocation order, which otherwise distinguishes between active incarceration and probation. After all, if Barb's sentencing order in Augusta County said his probation began after he was released from "any and all incarceration," and he participated in CCAP as a condition of that probation, there would be no question that he was subject to the conditions of his probation with Augusta County.

B. <u>The majority's problematic, and unnecessary, interpretation of the CCAP statutes may have significant consequences.</u>

Before 2019, the General Assembly authorized the Department of Corrections to establish and maintain three separate detention and diversionary programs: the Boot Camp Incarceration

Program, the Diversion Center Incarceration Program (DivCIP), and the Detention Center Incarceration Program (DetCIP). Code §§ 53.1-67.1, 53.1-67.7, 53.1-67.8 (2013). Each of these three programs required a defendant to be "on probation" with "[s]uch probation . . . conditioned upon the defendant's entry into and successful completion of" the program. Code §§ 19.2-316.1, 19.2-316.2, 19.2-316.3 (2015).

In 2019, the General Assembly repealed each of these statutes and instead authorized the Department of Corrections to create a single detention and diversionary program—CCAP. Code § 53.1-67.9; 2019 Va. Acts ch. 618. CCAP, like the programs before it, requires participants to be on probation. A defendant in CCAP, like a defendant in the programs before it, faces a "show cause [for] why his probation and suspension of sentence should not be revoked" upon "voluntary withdrawal" from the program, "removal from the program by the Department for intractable behavior," or "failure to comply with the terms and conditions of probation." Code § 19.2-316.4; Code §§ 19.2-316.2, 19.2-316.3 (2015). There is no question under the plain language of both Code § 53.1-67.9 and Code § 19.2-316.4 that CCAP, like the programs preceding it, is a program for probationers or parolees.[2]

Yet a program can simultaneously be both a condition of probation and incarceration. The Supreme Court held as much when it evaluated the DetCIP program. *Charles*, 270 Va. at 18. And our Court extended that holding in evaluating the DivCIP program. *Boone*, 60 Va. App. at 426. The relevant question in both cases was not what incarceration means *in general*, but how the word "incarceration" was understood in the context of *a specific statute*—Code § 19.2-306.

In *Charles*, the Supreme Court considered whether participation in DetCIP was "incarceration" such that a court sentencing a defendant for a violation of probation must give the

_____

[2] Because the status of parolees participating in CCAP, or any predecessor programs, is not relevant to the issues here, I generally omit those portions of the relevant statutes from my discussion.

- 11 -

defendant credit for the time spent in DetCIP before the violation.  A court must give credit for "time already served" when it re-imposes suspended time under Code § 19.2-306.  The statute does not define what sort of confinement does, or does not, count for receiving credit when a previously suspended sentence is re-imposed.  But the separate statute governing what counts as "time spent in confinement while awaiting trial" credits time spent "in a state hospital for examination purposes or treatment prior to trial, in a state or local correctional facility awaiting trial or pending an appeal, or in a juvenile detention facility awaiting trial for an offense for which, upon conviction, such juvenile is sentenced to an adult correctional facility."  Code § 53.1-187.[3]

The Supreme Court framed the question in *Charles* as whether participation in DetCIP "is incarceration and whether a probationer is entitled to credit for time served in [DetCIP] when his probation is later revoked."  *Charles*, 270 Va. at 16.  And the Supreme Court soundly rejected the argument that "participation in [DetCIP] is a condition of probation and therefore such participation is not incarceration."  *Id.* at 18.  Indeed, "[d]esignating an activity as an authorized condition of probation . . . is not a description of the nature of the activity."  *Id.*  Instead, the nature of the activity itself determines whether a detention or diversion program is incarceration for purposes of "time already served" under Code § 19.2-306.  In concluding the nature of DetCIP was incarceration, the Court looked to the language in the DetCIP statutes referring to a "short-term period of incarceration," "facilities available for confinement," release from "confinement," and the program being titled a "detention center incarceration program."

There is no doubt after *Charles* that a condition of probation can also be "incarceration" in some cases.  In *Boone*, our Court concluded DivCIP also qualified as time already served for

---

[3] This statute was amended and expanded effective June 30, 2022, to require a court to give credit for time spent "in pretrial confinement or detention on separate, dismissed, or nolle prosequi charges that are from the same act as the violation for which the person is convicted and sentenced to a term of confinement."  2022 Va. Acts ch. 399.

- 12 -

purposes of Code § 19.2-306. 60 Va. App. at 426. Unlike with DetCIP, the DivCIP statutes did not describe the program as a "short-term period of incarceration," but as "a system of residential diversion centers." Code § 53.1-67.7 (2013).

To sum up, in the context of interpreting Code § 19.2-306's requirement that courts give credit for "time already served" when re-imposing part of a suspended sentence, the nature of the program is relevant—not the mere fact that the person was on probation while participating in the program. Barb would have us to apply the same reasoning and import the definition of "incarceration" from *Charles* to our interpretation of the circuit court's order. Alternatively, Barb proposes that we interpret the court's order to incorporate the definition of incarceration the General Assembly used in defining when compensation may be provided for "wrongful incarceration" in Code § 8.01-195.10. But what the General Assembly meant by incarceration in an unrelated context is not relevant here. What is relevant is the circuit court's use and interpretation of the phrase "any and all incarceration" in its own order, which easily resolves the case as discussed above.

Instead, the majority takes Barb up on his offer to focus on particular statutory language as determinative of whether CCAP is generally "incarceration," rather than grounding its analysis in what the court meant by "any and all incarceration" in its revocation order. By converting this into a statutory interpretation case, my colleagues imply that under the CCAP statutes, participation in CCAP could *never* be incarceration, for any purpose, wherever the term appears. That the General Assembly continues to consider CCAP to be "incarceration" for several purposes demonstrates the majority's misstep. For example, in preventing the accumulation of interest on fines and costs while incarcerated, Code § 19.2-353.5 defines incarceration to include "confinement in a local or regional correctional facility, juvenile correctional facility, state correctional facility, residential detention center, or facility operated pursuant to the Corrections Private Management Act." The same

- 13 -

definition is used in setting out compensation that may be available to those wrongfully incarcerated. Code § 8.01-195.10. And for purposes of the "discretionary sentencing guidelines," a "person sentenced to a community corrections alternative program pursuant to § 19.2-316.4 shall be deemed to be sentenced to a term of incarceration." Code § 19.2-298.01(G).[4] So despite the statutory changes between the pre-2019 and post-2019 diversionary programs the majority points to as determinative—the removal of the phrase "short-term period of incarceration" and the renaming of the program—the General Assembly still includes CCAP as "incarceration" in several statutes.[5]

It is unsurprising that the General Assembly did not amend Code § 19.2-306 to clarify that time spent in CCAP should be credited against a re-imposed suspended sentence. After all, the Supreme Court, and this Court, already held that participation in diversionary programs counted as "time served." *See Waterman v. Halverson*, 261 Va. 203, 207 (2001) ("The General Assembly is presumed to be aware of the decisions of this Court . . . ."); *Cygnus Newport-Phase 1B, LLC v. City of Portsmouth*, 292 Va. 573, 582 (2016) ("[I]naction by the General Assembly despite awareness of the Court's interpretation of a statute 'is not only acquiescence but approval' of that interpretation." (quoting *Manchester Oaks Homeowners Ass'n v. Batt*, 284 Va. 409, 428 (2012))). And this conclusion aligns with Code § 53.1-187, which broadly gives a defendant credit for time spent in confinement while awaiting trial, including time spent in state hospitals and juvenile detention

_____

[4] While this statute says the definition of "incarceration" it provides is to be used "only" for the purpose of the discretionary sentencing guidelines, I am not arguing that this definition should be used elsewhere. Instead, I merely include this as an example of how "incarceration" means different things in different places and because it demonstrates why I cannot assume, as the majority does, that the General Assembly thought removing the word "incarceration" from a diversionary program per se disqualifies time spent in such a program from being considered "incarceration" no matter the context.

[5] In addition, the DivCIP program, which our Court found in *Boone* qualified as incarceration for awarding a defendant sentencing credit under Code § 19.2-306, also lacked the phrase "short-term period of incarceration" and instead referred to a "system of residential diversion centers." Code § 53.1-67.7 (2013).

facilities.  This is true even though the primary purpose of the juvenile justice system is "not conviction or punishment for crime; but crime prevention and juvenile rehabilitation," *Kiracofe v. Commonwealth*, 198 Va. 833, 844 (1957)—not unlike the programs offered by CCAP.

A future court asked to determine whether the changes the General Assembly made in instituting CCAP mean that a defendant should no longer receive "time served" credit for time spent in a detention and diversionary program—as the majority's reasoning could suggest—should instead evaluate the "nature of the activity," as it relates to Code § 19.2-306.  *Charles*, 270 Va. at 18.  CCAP, like its predecessor programs, is only available for a "defendant . . . who otherwise would have been sentenced to incarceration for a nonviolent felony."  Code § 19.2-316.4; Code § 19.2-316.2 (2015).  CCAP, like its predecessor programs, provides programming directed at rehabilitation, education, substance-abuse counseling, and job-training.  *Cf.* Code § 53.1-67.7 (2013), Code § 53.1-67.8 (2013).  The statute describing eligibility for CCAP, like its predecessor programs, repeatedly refers to "confinement."  Finally, a court might consider that the Department of Corrections, the agency responsible for the program, has described the similarities between CCAP and its predecessor programs this way: "Daily operations & facility structures will remain the same."[6]

---

[6] Department of Corrections, *Community Corrections Alternative Program* (Apr. 3, 2017), http://www.vcsc.virginia.gov/meetings.html.